The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, in a Pre-trial Agreement dated 25 October 1994, and in Industrial Commission Form 21 Agreement for Compensation for Disability, approved by the Commission on 26 July 1994 as
STIPULATIONS
The parties are subject to and bound by the North Carolina Workers' Compensation Act.
An employer-employee relationship existed between plaintiff and defendant-employer.
Nationwide Insurance Company is the carrier on the risk for all times relevant to this claim.
Plaintiff's average weekly wage is $423.97.
Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 18 June 1993.
The following documents concerning plaintiff are stipulated into evidence:
a. Division of Motor Vehicles Collision Report of 18 June 1993;
b. Termination letter of 2 May 1994;
c. Industrial Commission Forms 21 and 22;
d. Medical records of the Medical Arts Clinic;
e. Medical records of Dr. William Pekman;
f. Medical records of Dr. Donald A. Campbell;
g. Records of Wilson Security Services, Inc.
* * * * * * * * * * * * *
The Full Commission rejects the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff began his employment with defendant-employer in 1989 as a vending machine maintenance and repair person. Plaintiff had worked as a vending machine maintenance and repair person since 1976.
2. On 18 June 1993 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment when he was involved in a motor vehicle accident while driving one of the company trucks. His truck was struck from the side at an intersection. The truck had an open doorway, and he gripped the steering wheel forcefully to keep from being thrown out. As a result of the accident plaintiff injured his right elbow. He initially thought that his right elbow pain would resolve with time but his symptoms persisted. Consequently, plaintiff sought medical treatment.
3. A physician's assistant at the Medical Arts Clinic began treating plaintiff on 23 October 1993 with medication and a tendon strap for apparent right epicondylitis. After a short period of improvement his symptoms worsened. Plaintiff's arm was placed in a sling on 15 November 1993, and on 22 November 1993 he was restricted to limited work duties with no lifting over fifteen pounds. Plaintiff continued to complain of significant pain so on 2 December 1993 the physician assistant referred him to Dr. William M. Pekman, an orthopaedic surgeon, for evaluation.
4. Dr. Pekman began treating plaintiff on 3 December 1993 for lateral epicondylitis of the right elbow. He injected plaintiff's elbow and gave work restrictions. Plaintiff was to have limited use of his right hand at work with no lifting of over five pounds. Dr. Pekman estimated that plaintiff should observe the restrictions for at least three weeks and return in three weeks if still symptomatic.
5. Plaintiff was given work duties within Dr. Pekman's restrictions initially, but by the end of the month some of defendant-employer's workers, including Harold Turner, the owner of the company, were on vacation. Consequently, the company was short-staffed. On 31 December 1993 plaintiff was asked by Mr. Mark Moore, the Operations Manager, to inventory the warehouse. That job involved significant use of his right arm and lifting of up to twenty pounds.
6. On 4 January 1994 Mr. Green asked plaintiff to drive a vending route because a route driver had quit without giving prior notice. Plaintiff told Mr. Green that he didn't feel he could run the route but Mr. Green told him that they were short-handed. Driving a route also involved activities which exceeded the restrictions plaintiff had been given by Dr. Pekman. As he performed these jobs, the symptoms in plaintiff's right elbow and arm progressively worsened. On 5 January 1994 plaintiff was again asked to drive vending routes pursuant to Mr. Turner's request.
7. On 7 January 1994 upon being asked to run a route again plaintiff informed Mr. Turner that the work he was being asked to do exceeded the restrictions placed on his arm and accused Mr. Turner of not caring for the employees of the company. They had a loud exchange of words after which Mr. Turner sent plaintiff home.
8. Plaintiff returned to Dr. Pekman on 11 January 1994 with recurrent symptoms and they discussed his options which included surgery. Plaintiff elected to have the surgery. Defendants subsequently sent plaintiff to Dr. Donald A. Campbell, an orthopaedic surgeon, for a second opinion concerning the advisability of the operation. Dr. Campbell agreed that plaintiff was a surgical candidate. Thereafter, Dr. Pekman performed surgery to his right elbow.
9. Plaintiff's condition improved following the operation and on 29 April 1994 Dr. Pekman released him to return to work without restrictions effective 2 May 1994. Plaintiff reported for work that day but was immediately discharged because of his exchange of words with Mr. Turner on 7 January 1994.
10. Plaintiff contacted the vending machine companies in his area inquiring about a position as a maintenance and repair person but was not hired. Plaintiff eventually found a job as a part-time security guard beginning on 29 May 1994. Despite reasonable efforts, plaintiff had not found a full-time job as of the date of hearing and had not earned the same or greater wages as before his injury.
11. On 10 June 1994 Dr. Pekman released plaintiff from medical care with a 10% permanent partial disability rating to his right arm. Plaintiff subsequently saw Dr. Habashi for another opinion regarding his permanent disability and Dr. Habashi gave him a 15% rating.
12. Plaintiff reached maximum medical improvement on 10 June 1994 and retained a 12.5% permanent partial impairment to his right arm as a result of his injury by accident.
13. Defendants admitted liability for benefits under the Workers' Compensation Act for the injury in question and paid compensation to plaintiff for temporary total disability for sixteen weeks.
14. Plaintiff's exchange of words of 7 January 1994 with Mr. Turner and subsequent discharge of 2 May 1994 were related to his injury by accident of 18 June 1993. Plaintiff's conduct on 7 January 1994 did not constitute an unjustifiable refusal to accept suitable employment.
15. Plaintiff had not, as of the time of the hearing, regained the capacity to earn the same wages he was earning at the time of his injury in the same or any other employment, inasmuch as he had obtained, despite reasonable efforts, only a part-time position at reduced wages since reaching maximum medical improvement.
16. Although plaintiff was working less than 40 hours per week at the time of hearing, since 29 May 1994 plaintiff has had the capacity to earn $6.00 per hour and to work 40 hours per week. Plaintiff's wage earning capacity is $240.00 a week.
* * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. As a result of the injury by accident of 19 June 1993 plaintiff was unable to obtain employment despite reasonable efforts, until 29 May 1994, and plaintiff is entitled to continued temporary total disability compensation in the amount of $282.65 per week from the time of his discharge from defendant's employment on 2 May 1993 through 28 May 1994 when he obtained a part-time job as a security guard. N.C. Gen. Stat. § 97-2 (9); § 97-29.
2. As a result of the injury by accident of 19 June 1993 plaintiff has suffered a reduction in his capacity to earn wages. Plaintiff has elected to be compensated for his partial disability under N.C. Gen. Stat. § 97-30.
3. As a result of the partial disability to his right arm plaintiff is entitled to partial disability compensation equaling two-thirds of the difference between wages earned at the time of injury and wages he is capable of earning after the injury. Plaintiff is entitled to partial disability in the amount of $122.65 beginning 29 May 1994 and continuing for up to 300 weeks from the date of injury or until further Order of the Industrial Commission.
4. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to counsel fees, defendants shall pay to plaintiff in one lump sum, uncommitted, temporary total disability compensation in the amount of $282.65 per week from 2 May 1994 through 28 May 1994.
2. Subject to counsel fees, defendants shall pay plaintiff partial disability compensation in the amount of $122.65 per week beginning 29 May 1994 and continuing for up to 300 weeks from the date of injury, or until further order of the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel. Plaintiff's counsel shall also receive 25% of any future compensation due plaintiff, payable as every fourth check which shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident on 18 June 1993, when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
5. Defendants shall pay the costs due this Commission.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER
BSB:be